LOLA DAUGHERTY, Employee, Plaintiff v. CHERRY HOSPITAL/N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Employer, SELF-INSURED (KEY RISK MANAGEMENT, Third-Party Administrator), Defendant

No. COA08-211

(Filed 20 January 2009)

**1. Workers' Compensation— applicability of equitable remedies—laches**

The full Commission did not err by applying the equitable doctrine of laches to the statutory Workers' Compensation Act because: (1) our Supreme Court has previously upheld the equitable doctrine of estoppel in workers' compensation cases; and (2) the equitable law of laches applies in workers' compensation proceedings as well as in all other cases.

**2. Workers' Compensation— equitable remedy of laches unnecessary—adequate remedy at law**

The full Commission erred in its application of the equitable doctrine of laches to the statutory Workers' Compensation Act to determine that plaintiff's claim was time barred, and the case is remanded to the full Commission for further proceedings under Industrial Commission Rule 613, because: (1) Rule 613 provided the proper procedure and remedy at law for determining the issues raised by plaintiff's delay in pursuing her claim; (2) while defendant was not required to file a Rule 613 motion to dismiss to preempt plaintiff's filing of a Form 33, Rule 613 allowed defendant to file a motion to dismiss for failure to prosecute after plaintiff's filing of Form 33; (3) Rule 613 provided defendant with a complete remedy against plaintiff's detrimental delay in prosecuting her claim; and (4) although the findings and conclusions demonstrated that plaintiff acted in a manner which deliberately or unreasonably delayed her case and that defendant was prejudiced by plaintiff's delay, the full Commission did not address whether sanctions short of dismissal would be sufficient in this case.

Appeal by Plaintiff from Opinion and Award entered 21 September 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 August 2008.

*The Cole Law Firm, PLLC, by Alden B. Cole, for Plaintiff-Appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Sharon Patrick-Wilson, for the State.*

STEPHENS, Judge.

*Facts and Procedural History*

Plaintiff Lola Daugherty was employed by Defendant Cherry Hospital as a Health Care Technician on 16 November 1992 when she was attacked by a patient while working in the High Risk Unit. Plaintiff sustained physical injuries to her legs and stomach as a result of the attack. Plaintiff immediately sought treatment from Employee Health Services and was cleared to return to work the following day with no restrictions. On 17 November 1992, Defendant filed an Industrial Commission Form 19 Employer's Report of Injury to Employee.

DAUGHERTY v. CHERRY HOSP.

[195 N.C. App. 97 (2009)]

Plaintiff was treated at Wayne Psychiatric Associates, P.A., by Dr. Louis Gagliano on 22 December 1992. Dr. Gagliano diagnosed Plaintiff with major depression, prescribed medication, and "[g]ave her off work one week[.]" Plaintiff returned to work on 4 January 1993. At an examination by Dr. Gagliano on 5 January 1993, Plaintiff reported that, although she had returned to work, she could not "stay and work again." Dr. Gagliano ordered that she continue off work for another month.

Plaintiff was seen by Dr. Kurt Luedtke at the Waynesboro Family Clinic, P.A., on 14 January 1993. Dr. Luedtke extended Plaintiff's medical leave of absence through 19 February 1993, two weeks beyond the leave ordered by Dr. Gagliano. On 5 February 1993, Plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee, claiming benefits for physical and psychological injury. Plaintiff's claim for physical injury was accepted, but her claim for psychological injury was denied. Plaintiff did not return to work on 20 February 1993.

On 22 February 1993, Dr. Luedtke recommended that Plaintiff return to work with several limitations. Ms. Dale Hilburn, Director of Nursing at Cherry Hospital, advised Plaintiff that Defendant could not accommodate those restrictions but would consider other proposals including an extension of Plaintiff's leave without pay. Ms. Hilburn also requested a statement from Dr. Luedtke regarding the length of time the restrictions would apply. By letter dated 2 March 1993, Dr. Luedtke estimated the duration of Plaintiff's restrictions to be 120 days.

Plaintiff was assigned to work within the limitations prescribed by Dr. Luedtke as a receptionist from 12 March through 30 June 1993. At the end of this assignment, Plaintiff was expected to return to her routine duties as a Health Care Technician on the Nursing Care Unit.

By letter to the North Carolina Attorney General's Office also dated 2 March 1993, Dr. Luedtke opined that "it is unequivocally affirmed that each and every psychiatric symptom exhibited by [Plaintiff] subsequent to her attack and harassment at [Cherry Hospital] is a direct result of said attack" and "strongly recommended that [Plaintiff] receive Workman's [sic] Compensation for work related condition."

By letter dated 15 March 1993 from the Office of the Attorney General to Plaintiff's attorney, Cecil P. Merritt, Defendant refused to accept Plaintiff's claim for benefits for psychological injury based on

Dr. Luedtke's opinion. Defendant instead advised that it would seek a second opinion on the causal relationship, if any, between the attack on 16 November 1992 and Plaintiff's psychological problems and alleged disability. Bernice George of Cherry Hospital was to contact Mr. Merritt's office to schedule the initial appointment.

Defendant requested that Plaintiff see Dr. Gagliano for a second opinion. By letter dated 5 April 1993, Plaintiff, through her attorney, refused to submit to an examination by Dr. Gagliano. Defendant informed Plaintiff on 15 April 1993 "that pursuant to [N.C. Gen. Stat. §] 97-27(a), [Plaintiff's] right to take or prosecute any proceedings under the Worker's Compensation Act is suspended."

On 1 July 1993, Plaintiff reported to work but refused to resume her position in the Nursing Care Unit. On 7 July 1993, Plaintiff consented to work in the Infirmary Unit. Around August of 1993, Plaintiff's attorney ceased his representation of her before passing away.

By letter dated 3 November 1994, Plaintiff resigned from her position as a Health Care Technician at Cherry Hospital. Plaintiff explained:

> I am currently in the LPN Program and need the weekends off to complete my Clinical. The unavailability of any alternatives for a work schedule leave[s] me no choice but to submit my resignation.
>
> My greatest reward has been working with the patients.
>
> If in the future you should need me, please do not hesitate to call.

On 17 January 2006, Plaintiff filed a Form 33 Request that Claim be Assigned for Hearing, seeking retroactive and ongoing medical and indemnity compensation as a result of her injury on 16 November 1992. Defendant's first notice that Plaintiff was seeking further medical treatment was by copy of the Form 33 received in May 2006. Defendant filed a Form 33R Response to Request that Claim be Assigned for Hearing on 8 May 2006, stating that Plaintiff's claim was time barred pursuant to N.C. Gen. Stat. §§ 97-22, 97-24, and 97-25.1. The case was bifurcated so the issue of whether Plaintiff's claim was time barred could first be addressed.

On 24 October 2006, a hearing was held before Deputy Commissioner Ronnie Rowell. By Opinion and Award filed 29 November 2006,

Deputy Commissioner Rowell concluded that Plaintiff's claim was not time barred. Defendant timely appealed this decision to the Full Commission. The case was heard by the Full Commission on 19 July 2007. By Opinion and Award filed 21 September 2007, then Chairman Buck Lattimore, writing for the Full Commission, filed an Opinion and Award concluding that Plaintiff's claim was barred under the doctrine of laches and dismissing the claim with prejudice. From the Opinion and Award of the Full Commission, Plaintiff appeals.

### Discussion

Appellate review of an Opinion and Award of the Full Commission is limited to a determination of whether the Full Commission's findings of fact are supported by any competent evidence, and whether those findings support the Full Commission's legal conclusions. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). "The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence." *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (quotation marks and citation omitted). The Full Commission's conclusions of law are reviewable *de novo*. *Whitfield v. Lab. Corp.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003).

[1] Relying on case law from Oklahoma and Washington, Plaintiff argues that the Full Commission "erred in applying the equitable doctrine of laches to the statutory Workers' Compensation Act and in determining that Plaintiff's claim was time barred under the doctrine of laches." It appears that the North Carolina appellate courts have not previously addressed this issue.

Laches is an equitable remedy that is applied "where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim[.]" *Williams v. Blue Cross Blue Shield*, 357 N.C. 170, 181, 581 S.E.2d 415, 424 (2003) (quotation marks and citation omitted). "[W]hat delay will constitute laches depends upon the facts and circumstances of each case." *Id.* (quotation marks and citation omitted).

Equity supplements the law. Its office is to supply defects in the law where, by reason of its universality, it is deficient, to the

end that rights may be protected and justice may be done as between litigants.

Its character as the complement merely of legal jurisdiction rests in the fact that it seeks to reach and do complete justice where courts of law, through the inflexibility of their rules and want of power to adapt their judgments to the special circumstances of the case, are incompetent so to do. It was never intended that it should, and it will never be permitted to, override or set at naught a positive statutory provision. It is an instrument of remedial justice within and not in opposition to the law.

*Zebulon v. Dawson*, 216 N.C. 520, 522-23, 5 S.E.2d 535, 537 (1939). "Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Centre Dev. Co. v. Cty. of Wilson*, 44 N.C. App. 469, 470, 261 S.E.2d 275, 276, *disc. review denied and appeal dismissed*, 299 N.C. 735, 267 S.E.2d 660 (1980).

The North Carolina Supreme Court has upheld the application of the equitable doctrine of estoppel in workers' compensation cases. In *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E.2d 777 (1953), our Supreme Court expressly held that "[t]he [equitable] law of estoppel applies in [workers'] compensation proceedings as in all other cases." *Id.* at 665, 75 S.E.2d at 781. The Court determined that the doctrine of equitable estoppel may be invoked to prevent an employer from asserting the time limitation in N.C. Gen. Stat. § 97-24[1] as an affirmative defense, although the Court further concluded that the facts of that case were insufficient to invoke the doctrine.

Following the rule articulated in *Biddix*, our Supreme Court in *Gore v. Myrtle/Mueller*, 362 N.C. 27, 653 S.E.2d 400 (2007), concluded that the employer in that case should be equitably estopped from asserting the two-year time limitation of Section 97-24 as a bar to the employee's recovery. *Id.* at 40, 653 S.E.2d at 409.

Based on the above-cited law regarding the application of equitable remedies, and the precedent set by the North Carolina Supreme Court, we hold that the equitable law of laches applies in workers' compensation proceedings as in all other cases. Laches may "supplement[] the law[,]" *Zebulon*, 216 N.C. at 522, 5 S.E.2d at 537, and "what delay will constitute laches depends upon the facts and circumstances of each case." *Williams*, 357 N.C. at 181, 581 S.E.2d at 424.

---

1. N.C. Gen. Stat. § 97-24 contains a two-year statute of limitations for the pursuit of certain workers' compensation benefits. *See also* N.C. Gen. Stat. § 97-58.

DAUGHERTY v. CHERRY HOSP.

[195 N.C. App. 97 (2009)]

**[2]** We turn now to a consideration of whether the doctrine of laches was correctly applied by the Full Commission in this case.

"Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Jefferson Standard Life Ins. Co. v. Guilford Cty.*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945). Accordingly, we must determine whether the Workers' Compensation Act provides Defendant a full and complete remedy against prejudicial delay caused by Plaintiff's 13-year failure to pursue her claim after Defendant's notice of suspension of her benefits pursuant to N.C. Gen. Stat. § 97-27 for her refusal to submit to an examination by an expert of Defendant's choice.[2]

N.C. Gen. Stat. § 97-80(a) grants the Industrial Commission the power to make rules consistent with the Workers' Compensation Act in order to carry out the Act's provisions. Under the authority of this statute, the Commission adopted Rule 613 which provides in part:

Upon proper notice and an opportunity to be heard, any claim may be dismissed with or without prejudice by the Industrial Commission on its own motion or by motion of any party for failure to prosecute or to comply with these Rules or any Order of the Commission.

4 N.C.A.C. 10A.0613(a)(3) (2006). A workers' compensation case may be involuntarily dismissed with prejudice for failure to prosecute pursuant to Rule 613 if the Industrial Commission finds: (1) plaintiff acted in a manner which deliberately or unreasonably delayed the matter; (2) defendant was prejudiced by plaintiff's delay; and (3) sanctions short of dismissal would not suffice. *See Lee v. Roses*, 162 N.C. App. 129, 133, 590 S.E.2d 404, 407 (2004) (stating that the Industrial Commission must address these three factors in its order dismissing a claim with prejudice for failure to prosecute pursuant to Rule 613). Plaintiff argues that Rule 613 provides the "proper procedure" and "proper remedy at law" for determination of the issues raised by Plaintiff's delay in pursuing her claim. We agree.

In this case, by letter dated 15 April 1993, Defendant informed Plaintiff's attorney "that pursuant to [N.C. Gen. Stat. §] 97-27(a),

---

2. This statute provides in part: "After an injury, and so long as he claims compensation, the employee, if so requested by his employer . . . shall . . . submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Industrial Commission. . . . If the employee refuses . . . his right to compensation and his right to take or prosecute any proceedings under this Article shall be suspended until such refusal or objection ceases . . . ." N.C. Gen. Stat. § 97-27(a) (1993).

Plaintiff's] right to take or prosecute any proceedings under the Worker's Compensation Act is suspended." Plaintiff took no further action to pursue her claim until 17 January 2006, when she filed a Form 33 hearing request. While Defendant was not required to file a Rule 613 motion to dismiss to preempt Plaintiff's filing of the Form 33, upon Plaintiff's filing the Form 33, Rule 613 allowed Defendant to file a motion to dismiss for failure to prosecute. Defendant did not do so. However, Rule 613 also allows the Commission on its own motion and in its discretion to dismiss claims that are not timely prosecuted.

Unlike in *Biddix* and *Gore* where neither the General Statutes nor the Workers' Compensation Rules provide a remedy for an employee whose claim is barred because he or she failed, as a result of the employer's conduct, to file a claim within the period set out in N.C. Gen. Stat. § 97-24, Rule 613 provides Defendant with a complete remedy against Plaintiff's detrimental delay in prosecuting her claim. Accordingly, we hold the Industrial Commission erred in applying the doctrine of laches to bar Plaintiff's claim.

In its Opinion and Award, the Full Commission made the following findings of fact which are determinative of two of the factors necessary to support an involuntary dismissal of Plaintiff's claim with prejudice pursuant to Rule 613 for failure to prosecute:

16. On January 1, 2006, almost 13 years after plaintiff's psychological benefits were denied, plaintiff filed a Form 33 seeking medical and indemnity compensation as a result of the November 16, 1992 injury and retroactive to 1993. This was defendant's first notice that plaintiff was seeking further benefits since her claim for psychological treatment was denied in 1993. The undersigned find that plaintiff's 13-year delay in prosecuting her claim is unreasonable, and that based upon plaintiff's testimony, plaintiff was aware of her condition requiring psychological treatment during this 13-year time period.

. . . .

20. The undersigned find that plaintiff's unreasonable delay has hindered defendant's ability to investigate her claim and prevented defendant from providing treatment to lessen plaintiff's period of disability.

The Full Commission thus concluded:[3]

---

3. These conclusions are actually mixed findings of fact and conclusions of law.

6. . . . Although plaintiff knew of the existence of the grounds for a potential claim against defendant for her November 16, 1992 injury, plaintiff did not pursue her claim . . . until 2006. Plaintiff even continued to work for defendant until she voluntarily resigned in November of 1994. Given the fact that plaintiff was aware that she had a denied workers' compensation claim, continued to receive treatment at her own expense, and waited thirteen years to seek compensation, plaintiff's delay in time in prosecuting her claim was unreasonable and caused a change in the relationship with the parties.

7. Plaintiff's unreasonable delay in the prosecution of her workers' compensation claim has disadvantaged and prejudiced defendant. Defendant has been denied the opportunity to further investigate plaintiff's claim, direct medical treatment, and to provide medical treatment necessary to effect a cure, provide relief or lessen plaintiff's period of disability. A thirteen-year delay such as plaintiff's makes it difficult for defendant to obtain plaintiff's medical history dating back thirteen years, particularly when plaintiff has not treated with some of her doctors for over seven years. Further, defendant[] [was] denied the opportunity to mitigate any exacerbations of plaintiff's condition potentially related to plaintiff's workers' compensation claim. . . .

Plaintiff argues that "[f]indings of fact sixteen and twenty are unsupported by the evidence of record[.]" We disagree. The record establishes that Defendant denied Plaintiff's claim for psychological benefits on 15 April 1993. Plaintiff filed a Form 33 seeking medical and indemnity compensation in January 2006,[4] almost 13 years later. During this time, Plaintiff was treated by several different doctors for her alleged psychological injuries, although she could not remember when she saw these doctors and she did not know who paid for the visits. She said she had been prescribed "[m]edication for anxiety, depression and stuff like that[,]" but claimed not to know "what all the medicine is." She said she could not remember if she had worked anywhere since resigning her position with Defendant. Plaintiff testified that she had made attempts to contact Defendant during the 13-year delay, but she could not recall specific information regarding these attempts. The Full Commission found that "[P]laintiff's testi-

---

4. Although the Full Commission found that Plaintiff had filed her Form 33 on 1 January 2006, the record reveals the Form 33 was filed on 17 January 2006. Thus, Plaintiff's delay in filing the form was slightly longer than calculated by the Full Commission.

mony is not credible" and gave "greater weight to the testimony of Lisa Justice[.]"

Lisa Justice, a claims administrator for Key Risk Management, testified that she became involved in the case on 10 May 2006 when she received the Form 33. Key Risk Management had no record of the claim and Ms. Justice had never spoken to Plaintiff prior to receiving the Form 33. When Ms. Justice called Cherry Hospital to inquire about the claim, "they had to research to try to find the paperwork" and "eventually found" a record of the 1992 claim. Ms. Justice testified that she had never received any requests from Plaintiff for medical treatment before receiving the Form 33.

We conclude that findings of fact sixteen and twenty are supported by competent record evidence, and that the findings of fact support the conclusions of law. Furthermore, although Plaintiff assigns as error conclusions of law numbers six and seven, on the grounds that they are not supported by record evidence and are contrary to law, Plaintiff fails to argue these assignments of error in her brief and they are deemed abandoned. N.C. R. App. P. 28(b)(6).

The above-stated findings and conclusions determine that Plaintiff acted in a manner which deliberately or unreasonably delayed her case and that Defendant was prejudiced by Plaintiff's delay. *Lee*, 162 N.C. App. at 133, 590 S.E.2d at 407. The Full Commission did not address, however, whether sanctions short of dismissal would be sufficient in this case, thus requiring a remand of this matter for further determination by the Full Commission.

Accordingly, that part of the Full Commission's Opinion and Award which dismissed Plaintiff's claim with prejudice based on laches is reversed. This matter is remanded to the Full Commission for further proceedings under Rule 613 consistent with this Opinion. In light of this holding, we need not address Plaintiff's additional assignments of error.

REVERSED in part and REMANDED for further proceedings.

Judges STEELMAN and GEER concur.